UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Debbie Siegfried,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Loya Insurance Company, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:20-cv-01905-KJD-DJA<br><br>**Order** |

　　　　This is an insurance bad faith action arising out of Plaintiff Debbie Siegfried's allegations that Defendant Loya Insurance Company rejected her reasonable offer to resolve her bodily injury claim. (ECF No. 29 at 2). Plaintiff moves to compel Defendant's responses to certain of her interrogatories and requests for production, arguing that the requests are both relevant and proportional to her claims. (ECF No. 29). Because the Court finds that certain of Plaintiff's requests are too broad, it grants the motion in part and denies it in part. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.　　Background.**

　　　　***A.　　Procedural history.***

　　　　Jess Lopez—insured by Defendant—was in a car accident with Plaintiff. (ECF No. 29 at 3). Plaintiff, through her attorney, demanded Lopez's minimum $15,000 policy limit from Defendant. *See id.* at 4. Defendant offered $8,344.00 in response, after which Plaintiff filed a lawsuit. *See id.*

　　　　Plaintiff and Lopez eventually entered arbitration through which Lopez assigned all of his claims against Defendant to Plaintiff in exchange for Plaintiff agreeing not to execute upon Lopez' personal income or assets. *See id.* at 5-6. The arbitrator ultimately awarded Plaintiff a

total of $2,616,513.99 and $411,145.17 in attorneys' fees. *See id.* After the judgment was entered, Plaintiff commenced this action against Defendant. *See id.*

### B. Plaintiff's motion to compel.

Plaintiff moves to compel responses to four interrogatories and three requests for production. *See id.* at 7-11.

**Interrogatory Nos. 1 and 2:**
Identify all third-party bodily injury claims from January 1, 2010 to the present wherein Loya Insurance Company or any of its affiliate entities paid an amount in excess of the contractual bodily injury liability policy limits to settle the third-party bodily injury claim in the state of Nevada [outside the state of Nevada], including the following:
(a) The name of the insured;
(b) The name(s) of the claimant(s);
(c) The applicable bodily injury liability policy limit;
(d) The amount(s) paid to settle the third-party bodily injury liability claim(s); and
(e) The date(s) of such payments.[1]

**Interrogatory No. 3:**
Identify all third-party bodily injury lawsuits from January 1, 2010 to the present resulting in a judgment in excess of the Loya Insurance Company or any of its affiliate entities' contractual liability policy limits wherein Loya Insurance Company or any of its affiliate entities paid the excess liability above the contractual liability policy limit, including the following:
(a) Case name and number;
(b) Venue of each lawsuit;
(c) Amount of jury verdict or award by the Court;
(d) Total judgment amount;
(e) Disposition of appeal, if applicable;
(f) The bodily injury liability policy limit;
(g) The amount paid to satisfy or resolve any such award, verdict, or judgment; and
(h) The date(s) of such payments.

**Interrogatory No. 4:**
Identify all lawsuits filed against Loya Insurance Company or any of its affiliate entities from January 1, 2010 to present alleging

---

[1] According to Plaintiff, Interrogatory Nos. 1 and 2 read the same, except that Interrogatory No. 1 seeks claims in the State of Nevada and Interrogatory No. 2 seeks claims outside the State of Nevada.

breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith claims handling, and/or unfair claims practices in any way alleging Loya Insurance Company or any of its affiliate entities failed to settle and/or resolve a third-party bodily injury liability claim within the applicable policy limits wherein there was an award, verdict and/or judgment in an amount in excess of the applicable policy limits, including the following:

(1)     Case and number;
(2)     Venue of each lawsuit;
(3)     Disposition of the action including appeal, if applicable;
(4)     The underlying bodily injury liability policy limit;
(5)     The amount paid to settle and/or resolve such action; and
(6)     The date(s) of such payments.

**Request for Production No. 48:**
For each claim identified in Plaintiff Debbie Siegfried's First Set of Interrogatories to Defendant Loya Insurance Company Interrogatory No. 1, served concurrently herewith, please produce the entire claims file including, but not limited to, log notes, evaluations, communications, and settlement records.

**Request for Production No. 49:**
For each lawsuit described in Plaintiff Debbie Siegfried's First Set of Interrogatories to Defendant Loya Insurance Company Interrogatory No. 3, served concurrently herewith, please produce a complete copy of the complaint filed against Loya Insurance Company or its affiliates.

**Request for Production No. 50:**
For each lawsuit described in Plaintiff Debbie Siegfried's First Set of Interrogatories to Defendant Loya Insurance Company Interrogatory No. 4, served concurrently herewith, please produce a complete copy of the complaint filed against Loya Insurance Company or its affiliates.

In her motion to compel, Plaintiff asserts that the discovery she seeks is relevant and proportional to her case. (ECF No. 29). She explains that the theory of her case is that Defendant acted in bad faith by failing to make a reasonable settlement decision when it offered her less than Lopez' policy limit. *See id.* at 12. According to Plaintiff, Defendant "refused to conduct a fair and objective evaluation of her bodily injury clam and the extent of the injuries she suffered." *Id.* at 13. She argues that any payments Defendant made to settle third-party bodily injury claims in excess of its insured's policy limits are "tacit admission[s]" that [Defendant] failed to make a reasonable settlement decision. *See id.* Thus, her requested information for "previous third-party

bodily injury claims will demonstrate the frequency in which [Defendant] has failed to satisfy its settlement duties, like it did in this matter [which]…in turn [] will help Siegfried demonstrate to the jury that [Defendant] has engaged in a pattern of failing to conduct reasonable settlement investigations or evaluations like it did with her claim. *Id.* at 14.

Regarding the claim files she requests, Plaintiff explains that the information "will allow Siegfried to identify analogous facts or circumstances to demonstrate the unreasonableness of [Defendant's] unfair settlement practices." *Id.* at 15. Regarding her requests for information about other bad faith lawsuits, Plaintiff argues that she will use the information to conduct independent research and draw parallels between Defendant's handling of her claim and of other bodily injury claims. *See id.* at 17. She concludes that her requests for information about prior lawsuits are not unduly burdensome because Defendant only underwrites claims in ten states, and Plaintiff only asks for eleven years of data. *See id.* at 17-18. She does not address the burden of her requests for third-party bodily injury claims and claim files.

In response, Defendant argues that Plaintiff's requests are neither relevant nor proportional. (ECF No. 30). Defendant argues that the requests are not relevant because other insured's claims and lawsuits—with unique facts of their own—have no bearing on the facts of Plaintiff's case. *See id.* at 6-7. Plaintiff's requests are not proportional, Defendant argues, because she seeks all claims and all lawsuits where the amount Defendant ultimately paid was above the policy limits. *See id.* Defendant adds that it does not have an electronic search capability to search by Plaintiff's terms and thus would have to spend thousands of hours to review hundreds of thousands of claims dating back to 2010. *See id.* at 9. In support of this assertion, Defendant submits the declaration of its employee Scott Bennet, who explains that Defendant has handled approximately 1,091,385 auto claims in various states since 2010. (ECF No. 30-1 at 2). Bennet adds that, because Defendant does not keep separate records regarding lawsuits, complaints, or outcomes involving the claims, searching and then reviewing the claims for privilege would take thousands of hours. *See id.* at 2-3. Defendant also raises the privacy interests of its insureds, arguing that the Plaintiff seeks entire claims files for non-parties—which implicates privacy rights and medical privacy rights of other people—information which

Defendant is not authorized to release. (ECF No. 30 at 8). These individuals, Defendant argues, have a right to privacy and confidentiality in their identities, policies, and the information contained in Defendant's claim files. *See id.* Defendant concludes by arguing that entering evidence of other claims at trial would result in mini trials about the facts of those claims and the ways in which they are like or unlike Plaintiff's case. *See id.* at 10-11. Defendant points out that only insureds who consent by written letter could have their private files used in litigation, and "those insureds who would permit a plaintiff to access their files are the ones who are dissatisfied with their claim handling." *Id.*

In reply, Plaintiff maintains that she is entitled to all the information she seeks. (ECF No. 31). In response to Defendant's assertion that her requests are not proportional because they seek all lawsuits and claims, Plaintiff reiterates that she only seeks claims where Defendant settled in an excess of its insured's policy limits or where it was sued for failing to make reasonable settlement decisions. *Id.* at 4. In response to Defendant's argument that Plaintiff seeks confidential information, Plaintiff explains that she is not seeking addresses or telephone numbers and that Defendant could easily redact medical and privileged information. *See id.* at 8. Plaintiff also questions Defendant's argument, and Bennet's declaration, that searching for the claims and lawsuits that Plaintiff requests would be unduly burdensome. *See id.* Plaintiff argues that there should be no reason why Defendant cannot electronically search its database, extract Nevada claims from other claims, or narrow the responsive files before reviewing them. *See id.* at 10. She concludes by arguing that whether the information she requests would result in mini trials is a question of admissibility not before this Court. *See id.* At 10-11. But even if it were, there is no danger of mini trials because the factual differences between Plaintiff's claims and others do not matter. *See id.* Rather, Plaintiff requests that Defendant "only produce information and documents from those claims in which [Defendant] has admittedly breached its duty to make reasonable settlement decisions." *Id.*

**II.     Standard.**

If a party resists discovery, the requesting party may file a motion to compel. *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)-(iv) ("A party seeking discovery may move for an order

compelling an answer, [or] production ... if ... (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents ... as requested under Rule 34."). The motion must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *See Sanhueza v. Lincoln Technical Institute, Inc.*, No. 2:13-cv-2251-JAD-VCF, 2014 WL 6485797, at *2 (D. Nev. Nov. 18, 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). The party opposing discovery has the burden of showing that the discovery is, among other things, irrelevant, overly broad, or unduly burdensome. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)). To meet this burden, the objecting party must specifically detail the reasons why each request is objectionable. *See Fosbre*, 2016 WL 54202, at *4.

**III.   Discussion.**

To be discoverable under Federal Rule of Civil Procedure 26(b)(1), information must be: (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The first prong is straightforward: evidence must be relevant to any party's claim or defense. *See id.* The second prong involves a six-factor test. *See id.* These include: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 26(b)(2)(C) further limits discovery and allows the Court to restrict discovery where it is "outside the scope of Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(3). In deciding whether to restrict discovery under Federal Rule of Civil Procedure 26(b)(2)(C), the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *3 (D. Nev. July 25, 2017) (internal citations and quotations omitted). Fed. R. Civ. P. 26 gives the Court broad discretion to

"tailor discovery narrowly and to dictate the sequence of discovery." *See id.* (internal citations and quotations omitted).

### A. The Court denies Plaintiff's motion to compel responses to Interrogatory Nos. 1 and 2 and Request for Production 48.

In its motion to compel, Plaintiff cites *Colonial Life & Accident Ins. Co. v. Superior Court* for the proposition that "discovery aimed at determining the frequency of alleged unfair settlement practices is…likely to produce evidence directly relevant to the bad faith action." (ECF No. 29 at 12). *Colonial Life* is a California Supreme Court case which underpins many of the California United States District Courts' interpretations of when discovery requests for information regarding other claimants is appropriate. *See Colonial Life & Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (1982). However, that case does not stand for unfettered access to third-party insured's claim files. *See id.* Nor does it discuss proportionality objections. *See id.* Rather, in it, the California Supreme Court considered the trial court's decision to order an insurance company to produce the names and addresses of all persons whose claims for benefits under its policies were assigned to a certain employee for settlement. *See id.* at 789. The claims totaled thirty-five, and the trial court ordered plaintiff's counsel to send a letter to the insureds, requesting that they consent to the release of their records. *See id.* The defendant appealed the matter, in part, because it believed that evidence of a "pattern of unfair practices was irrelevant as a matter of law." *Id.* at 790 (internal quotations omitted). The California Supreme Court disagreed, ruling that the items sought were relevant. *See id.* at 792.

In *Collins v. JC Penney Life Ins. Co.*, the United States District Court for the Southern District of California considered a plaintiff's request for claim information and claim files for insureds who filed similar claims to plaintiff, which were denied on the same grounds, and handled by the same four employees between 1997 to 2003. *See Collins v. JC Penney Life Ins. Co.*, No. 02cv0674-L(LAB), 2003 WL 25945842, at *4-5 (S.D. Cal. May 6, 2003). In finding the requests irrelevant, the court noted:

> The lynchpin is not whether JC Penney denied claims similar to Collins' but rather whether the denials were appropriate, on the facts

>and circumstances of each particular case. Collins' summary assertion that JC Penney "has regularly denied legitimate claims" will beg the question in each instance whether the claim was in fact a "legitimate" one and the denial wrongful. *Id.*

In finding the requests overly burdensome—in other words, disproportional—the court analyzed a declaration from a JC Penney employee. *See id.* at *6-7. That employee attested that JC Penney could not search the plaintiff's variables in its database and processed about 4,872 claims per year since 1997. *See id.* That meant JC Penney would have to manually search its claims files to find responsive information. *See id.* The Court noted the difference between the thousands of claims JC Penney would have to sift through and the thirty-five at issue in *Colonial Life* and denied the plaintiff's motion to compel. *See id.*

Here, the Court denies Plaintiff's motion to compel responses to Interrogatory Nos. 1 and 2 and Request for Production No. 48. The Court does not find Plaintiff's reliance on *Colonial Life* persuasive. Not only does Nevada lack the safeguards to protect insured's privacy in cases like these similar to *Colonial Life*, *Colonial Life* does not support the broad requests that Plaintiff makes in Interrogatories Nos. 1 and 2 and Request for Production 48. Rather, those requests yielded only thirty-five claims, compared to the approximately 1,091,385 needing to be reviewed here, and the *Colonial Life* court did not address proportionality.

*Collins*, however, is more persuasive here. Regarding relevance, Plaintiff asserts that each third-party bodily injury claim in which Defendant paid more than the contractual bodily injury liability limits is an admission that Defendant did not make a reasonable settlement decision. She uses this to argue that all of these types of claims are relevant to her cause of action, even those claims outside Nevada. The Court disagrees. Similar to the plaintiff's argument in *Collins*, Plaintiff's argument that Defendant did not make reasonable settlement decisions will necessarily place the facts of each claim at issue. While Plaintiff argues that the individual facts are not at issue, Defendant argues that it handles each claim based on its individual facts. And because Plaintiff's requests do not specify a type of bodily injury claim, the facts will vary substantially between the claims her requests encompass, making their relevance to her instant claim more tenuous.

Regarding proportionality, although the plaintiff in *Collins* asked for a longer time period than Plaintiff does here, Defendant handles far more claims per year than JC Penney did: over 100,000 claims per year. Like JC Penney, Defendant has also submitted a declaration from one of its employees attesting that, to find the results Plaintiff requests would require employees to sift through thousands of claims manually. The burden of finding claims responsive to Plaintiff's requests is multiplied by Plaintiff's assertion that the insureds' privacy concerns can be dealt with by redactions. But redactions and the creation of privilege logs are time consuming. This is particularly true because Defendant would have to make redactions with an eye towards the fact that the insureds have not released their information and have no idea that their information could be included in someone else's lawsuit. Because the tenuous relevance of Plaintiff's Interrogatory Nos. 1 and 2 and Request for Production No. 48 is not sufficient to overcome the burden it would impose on Defendant, the Court denies Plaintiff's motion to compel responses to these requests.

### B. The Court grants in part Plaintiff's motion to compel responses to Interrogatory Nos. 3 and 4 and Request for Production Nos. 49 and 50.

Plaintiff relies on *Lillibridge v. Nautilus Ins. Co.*, for the proposition that "prior bad faith litigation may be relevant to show the insurer's knowledge and conduct and whether a pattern and practice of inadequate investigation offering unreasonably low settlement offers, or other reprehensible conduct is being repeated among policyholders." (ECF No. 29 at 17). In *Lillibridge*, a case out of the Southern District of South Dakota, the Court ordered the defendant insurance company to provide the case name, court, docket number, substance of the allegations, and outcome of bad faith cases brought against it for the past twelve years. *See Lillibridge v. Nautilus Ins. Co.*, No. CIV 10-4105-KES, 2013 WL 1896825, at *6 (D.S.D May 3, 2013). In reaching that conclusion, the Court found that the defendant insurance company had not carried its burden of showing the discovery request asking for the information was overly broad, burdensome, or oppressive. *See id.*

Courts in this district, however, have not provided for such broad discovery into similar lawsuits. *See Phillips v. Clark County School Dist.*, No. 2:10-cv-02068-GMN-GWF, 2012 WL 135705, at *5 (D. Nev. Jan. 18, 2012). In *Phillips*, the court determined that other lawsuits

"involving the same policy provision at issue" are relevant to prove the meaning of an ambiguous insurance policy provision. *See id.* But the court found that evidence of other lawsuits is not unfettered. *See id.* "Because discovery regarding other similar claims or lawsuits may be burdensome, however, the courts also impose limits on the scope, timeframe or number of other similar claims to be produced." *Id.* (internal citations omitted). The court cited two decisions in which courts "limited the production to the ten earliest and ten most recent claims for a particular time period." *Id.*

Here, the Court grants Plaintiffs motion to compel answers to Interrogatory Nos. 3 and 4 and Request for Production Nos. 49 and 50 but limits the scope of these requests. Defendant has not provided case law directly addressing whether Plaintiff's request for lawsuits—as opposed to claims—are relevant and proportional. Rather, Defendant appears to wrap its argument concerning the other lawsuits Plaintiff requests in Interrogatory Nos. 3 and 4 and Request for Production Nos. 49 and 50 into its arguments about claims. Nonetheless, while the Court finds *Lillibridge* persuasive on the issue of relevance, it does not find it persuasive on the issue of proportionality. This is particularly true because, although Defendant does not provide case law directly on point, it does argue and include in its employee's declaration that searching for lawsuits containing these descriptions would be similarly time consuming as searching for claims. The Court thus finds it appropriate to limit the scope of these discovery requests to the ten earliest and ten most recent lawsuits matching Plaintiff's description between January 1, 2010 and the present.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to compel (ECF No. 29) is **granted in part and denied in part**.  Plaintiff's motion is denied as it relates to Interrogatory Nos. 1 and 2 and Request for Production No. 48.  Plaintiff's motion is granted in part as it relates to Interrogatory Nos. 3 and 4 and Request for Production Nos. 49 and 50.  Defendant must respond to Interrogatory Nos. 3 and 4 and Request for Production Nos. 49 and 50 by providing responsive information from the ten earliest and ten most recent lawsuits matching Plaintiff's description between January 1, 2010 and the present.

DATED: November 1, 2021

---
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE